United States Court of Appeals
Fifth Circuit

**F I L E D**

September 21, 2005

Charles R. Fulbruge III
Clerk

In the United States Court of Appeals

For the Fifth Circuit

_____

No. 03-20989

_____

DWAYNE ROSS; MARIA ROSS, individually and as next friend of
Sydney Ross and Johnathon Ross, minor children; SYDNEY ROSS,
minor child; JOHNATHON ROSS, minor child,

Plaintiffs - Appellees,

versus

MATTHEW CURTIS MARSHALL; ET AL,

Defendants,

ALLSTATE TEXAS LLOYDS INSURANCE CO.,

Movant - Appellant.

_____

Appeals from the United States District Court
For the Southern District of Texas

_____

Before HIGGINBOTHAM, DAVIS, and GARZA, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

An insurer sought to intervene as of right in a suit against
its insured for the purpose of appealing a judgment holding the
insured vicariously liable for $10 million in damages. The
district court denied the intervention and struck the insurer's
answer and notice of appeal. The insured subsequently abandoned
his appeal and assigned all rights and claims against his insurer

to the plaintiffs.  The insurer appealed.  After first addressing our jurisdiction, we conclude that the district court erred in denying intervention and abused its discretion in entering an amended judgment holding the insured vicariously liable for the criminal acts of his child.  Accordingly, we reverse the district court's order denying intervention and its amended final judgment, and remand with instructions.

I

On the night of June 18, 2000, Wayne Mathews, then a 20-year old college student, gathered with some of his friends outside his parents' home in Katy, Texas.  At approximately 10:30 p.m., Wayne's father Kent Mathews instructed Wayne to "wrap things up," and then retired for the evening to go to sleep.  The record indicates that Wayne and his friends were drinking at this time, but is inconclusive as to whether Kent was aware of this fact.

Far from "wrapping things up," Wayne and his friends continued imbibing alcohol, and decided to construct a large wooden cross and burn it in front of an African-American family's home.  Using materials gathered in part from the garage of the Mathews' residence, the group set to work on the cross in the driveway and front lawn of the Mathews' home.  This activity took place during the early morning hours of June 19.  After completing the cross, the group of friends transported it to the home of the Rosses, an African-American family, placed it in their yard and set it

2

ablaze.[1]

The Rosses filed a civil suit against Wayne and his friends, alleging various intentional torts and civil rights violations.[2] In addition, the Rosses sought to recover from Wayne's parents, Kent and Sally Mathews, on grounds that they "knew or should have known that their properties and household effects were being used in [] a negligent and reckless manner." At the time of the cross-burning incident, Kent and Sally Mathews owned a homeowner's insurance policy issued by Allstate covering "damages because of bodily injury . . . caused by an occurrence" for which coverage was provided. Allstate provided an attorney to defend Kent and Sally Mathews subject to a reservation of rights.[3]

The court initially dismissed Kent and Sally Mathews from the suit pursuant to Federal Rule of Civil Procedure 12(b)(6), but reinstated them as defendants when the Rosses clarified that they were seeking to hold them directly liable under a negligence theory, and vicariously liable as principals for their son's

---

[1] After a federal investigation, the members of the group were apprehended. Wayne pleaded guilty to one count of conspiracy to commit civil rights violations and served time in a federal penitentiary.

[2] Although originally filed in state court, the suit was quickly removed by the U.S. Attorney's office to the federal district court for the Southern District of Texas.

[3] Pursuant to its reservation of rights, Allstate later filed a declaratory judgment action seeking a judicial determination that it had no obligation under the homeowner's policy to defend or indemnify Kent, Sally or Wayne in the present suit. This action remains pending before the same court that tried this case. *See Allstate Tex. Lloyds Ins. Co. v. Mathews*, No. 4:02-CV-0964 (S.D. Tex., filed Mar. 12, 2002).

intentional acts. The Rosses eventually dismissed their claims against Sally, and went to trial on their claims against Kent, Wayne, and Wayne's friends.

Following trial, a jury found Wayne and his friends liable for approximately $10 million in damages. The jury also found that Kent had delegated his authority to Wayne over the Mathews' property on the night in question, and that this delegation was negligent. However, the jury concluded that this negligent delegation of authority was not a proximate cause of the cross-burning. Based on these findings, the court concluded that

> while it is undisputed that Wayne Mathews' use of the Mathews' property was within the scope of [the delegated] authority, the wrongful acts were not. Therefore, the Court holds that the plaintiff shall take-nothing against Kent Mathews for his wrongful act. Moreover, the wrongful acts and the damages found against Wayne Mathews are not attributable to him.[4]

The Rosses filed a motion to amend the judgment, arguing that they were entitled to recover against Kent on a theory of vicarious liability. Conceding that the jury verdict precluded a finding of direct liability under a negligence theory, the Rosses urged the court to amend its judgment to reflect that they could recover against Kent, as principal, for the acts of his agent, Wayne. They argued that the existence of a principal-agent relationship was supported by the jury's finding that Kent had delegated authority over the Mathews' house to Wayne on the night of the cross-burning.

---

[4] *Ross v. Marshall*, No. H-01-1311, at 2 (S.D. Tex. May 28, 2003) (unpublished final judgment).

4

Further, they contended that Wayne's acts, while not necessarily foreseeable to Kent, were within the scope of authority delegated to Wayne. Kent opposed this motion, arguing that he could not be found liable as a principal because his son's criminal acts fell outside the scope of Wayne's delegated authority.

On August 20, 2003, the district court entered is amended final judgment, finding as a matter of law that Kent was vicariously liable for Wayne's conduct. Despite the jury's finding that Kent's negligent delegation of authority did not cause the Ross's injury, the court found "that it is undisputed that Wayne Mathews' use of the Mathews' property was within the scope of authority granted by Kent Mathews. Therefore, the Court holds that while Kent Mathews is not directly liable, he is, nevertheless, indirectly liable."[5] In its Order on Motion to Amend Judgment, the Court explained that it "erroneously circumscribed and omitted a treatment of Kent Mathews' conduct under a vicarious liability theory" in its original judgment.[6] The court then recounted evidence that Kent was aware of his son's extensive problems with alcohol, noting that a jury could have inferred that Kent knew that Wayne was not a person to whom authority over his personal and real property should be granted. The court continued:

---

[5] *Ross v. Marshall*, No. H-01-1311, at 2 (S.D. Tex. Aug. 20, 2003) (unpublished amended final judgment).

[6] *Ross v. Marshall*, No. H-01-1311, at 1-2 (S.D. Tex. Aug. 20, 2003) (unpublished order).

5

> Based on the jury's findings and the reasonable inferences to be drawn from their findings, the Court concludes that Kent Mathews is, as a matter of law, vicariously liable for delegating authority over his premises and materials to an untrustworthy son. The Court also finds and holds that the act of delegation of authority by Kent Mathews was negligent, and [more so] an accident as that term is defined in the policy of insurance.[7]

On September 3, 2003, Kent, through counsel appointed by Allstate, filed a notice of appeal from the amended judgment. On that same day, Allstate filed a post-judgment answer, notice of appeal, and motion to intervene as of right based in part on the district court's coverage finding, and in part on its concern that Kent would not appeal the judgment. Allstate also sought to supersede the judgment by agreeing to a bond in the full amount of its $300,000 policy limit. On September 4, 2003, Kent filed a motion to alter or amend the court's amended judgment. On September 12, 2003, the court struck Allstate's answer and notice of appeal, and denied its motion to intervene and Kent's motion to amend judgment. In addition, the court denied the motion for approval of Allstate's supersedeas bond without opinion. Allstate timely appealed the court's denial of its motion to intervene.

Following these events, Kent agreed to fire his appellate counsel, dismiss his appeal, and assign all his rights against Allstate to the Rosses. In exchange, the Rosses agreed to delay filing writs of execution against his property. We dismissed

---

[7] *Id.* at 3.

6

Kent's appeal for want of prosecution on February 5, 2004.

## II

Allstate contends that the district court erred in denying its motion to intervene as of right. In addition, Allstate attacks the amended judgment of the district court on several grounds. First, it argues that the district court erred in making findings on an agency theory that had been waived by the Rosses. Second, it contends that the district court erred in entering judgment against Kent as a matter of law based on the agency theory. Third, Allstate urges that the district court abused its discretion by amending its judgment under Rule 59(e) to find Kent liable on a theory that had previously been abandoned. Finally, Allstate argues that the court erred in attempting to hold Kent liable on a negligence theory that was expressly rejected by the jury.

In response, the Rosses contend that this appeal must be dismissed because the district court lacked jurisdiction to rule on Allstate's motion to intervene after Kent filed his notice of appeal. The Rosses also argue that Allstate failed to satisfy the requirements for intervention as of right. Finally, the Rosses argue that they neither waived nor abandoned their agency theory, and that the district court's judgment was supported by both the jury's finding that Kent negligently delegated his authority to Wayne, and undisputed evidence that Wayne's acts were within the scope of that authority.

## III

7

We first address the Rosses's argument that this appeal must be dismissed because the district court lacked jurisdiction to decide Allstate's motion to intervene. Although this argument was raised for the first time at oral argument, we must consider it as it goes to our jurisdiction.[8]

The substance of the argument is straightforward. The district court entered its amended final judgment holding Kent liable on August 20, 2003. On September 3, Kent filed a notice of appeal, and Allstate filed its motion to intervene. The district court did not deny Allstate's motion to intervene until September 12. Our court follows the general rule that "the filing of a valid notice of appeal from a final order of the district court divests that court of jurisdiction to act on the matters involved in the appeal, except to aid the appeal, correct clerical errors, or enforce its judgment so long as the judgment has not been stayed or superseded."[9] We have found that this rule deprives a district court of jurisdiction to entertain a motion to intervene after a valid notice of appeal has been filed.[10] Thus, under the general

---

[8] *See Hernandez ex rel. Hernandez v. Tex. Dep't. of Protective & Regulatory Servs.*, 380 F.3d 872, 878 (5th Cir. 2004) ("Prior to reaching the merits, we must verify, *sua sponte*, that our jurisdiction . . . is proper."); *In re McCloy*, 296 F.3d 370, 373 (5th Cir. 2002) ("[A] lack of subject matter jurisdiction may be raised at any time, and we can examine the lack of subject matter jurisdiction for the first time on appeal.").

[9] *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 928 (5th Cir. 1983).

[10] *See Nicol v. Gulf Fleet Supply Vessels, Inc.*, 743 F.2d 298, 299 (5th Cir. 1984) (district court lacked jurisdiction to entertain motion to intervene filed seven days before notice of appeal, but not ruled on until after appeal was

8

rule, the district court lacked jurisdiction to entertain Allstate's motion to intervene.

Responsive to our request for supplemental briefing, Allstate urges that the notice of appeal filed on September 3 was rendered ineffective by the filing of Kent Mathews' Rule 59(e) motion to amend judgment filed on September 4, and revived only when the district court entered its ruling denying the Rule 59(e) motion on September 15. As a result, Allstate concludes that the district court had jurisdiction to deny Allstate's motion to intervene on September 12.

Federal Rule of Appellate Procedure 4(a)(4)(B)(i) provides:

> If a party files a notice of appeal after the court announces or enters a judgment--but before it disposes of any motion listed in Rule 4(a)(4)(A)--the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered.[11]

Our court has found that the timely filing of a motion listed in Rule 4(a)(4)(A) suspends or renders dormant a notice of appeal until all such motions are disposed of by the trial court.[12] This

---

taken); *Avoyelles Sportsmen's League, Inc.*, 715 F.2d at 927-28 (district court lacked jurisdiction to entertain motion to intervene filed more than one month after a timely notice of appeal).

[11] FED. R. APP. P. 4(a)(4)(B)(i).

[12] *See Simmons v. Reliance Standard Life Ins. Co. of Tex.*, 310 F.3d 865, 868 (5th Cir. 2002) ("Rule 4(a)(4) suspends the time for review by this Court because, until the district court addresses all post-judgment motions specified by the rule, it has not entirely finished with a case."); *Bann v. Ingram Micro, Inc.*, 108 F.3d 625, 626 (5th Cir. 1997) ("Bann's notice of appeal, filed after the entry of the judgment but before the disposition of his motion to reinstate the case, was ineffective to appeal from the judgment until the entry of the order disposing of that motion."); *Burt v. Ware*, 14 F.3d 256, 258 (5th Cir. 1994)

holds true regardless of whether the motion was filed before or after the notice of appeal.[13]

One of the motions listed in Rule 4(a)(4)(A) is a motion "to alter or amend the judgment under Rule 59."[14] Because Kent Mathews' timely filed his Rule 59 motion to alter of amend judgment, his motion suspended the effectiveness of his earlier filed notice of appeal until September 15, the date on which the district court entered is order denying the motion.[15] Thus, the district court had jurisdiction to deny Allstate's motion to intervene on September 12.

---

(treating a notice of appeal filed before disposition of a post-judgment motion listed in Rule 4(a)(4)(A) as "dormant").

[13] An Advisory Committee note to Paragraph (a)(4) provides: "A notice filed *before the filing of one of the specified motions* or after the filing of a motion but before disposition of the motion is, in effect, suspended until the motion if disposed of, whereupon, the previously filed notice *effectively places jurisdiction in the court of appeals*." FED. R. APP. P. 4 Advisory Committee note (1993 Amendments) (emphasis added). Although "Advisory Committee Notes do not have the force of law, [] they are instructive in determining Congress's intent in amending a statute." *Moody Nat'l Bank of Galveston v. GE Life & Annuity Assurance Co.*, 383 F.3d 249, 253 (5th Cir. 2004).
In *United States v. Silvers*, the Fourth Circuit applied the 1993 amendments to Rule 4, finding:
> Under the 1993 amendments to the Federal Rules of Appellate Procedure, when a party files a timely notice of appeal followed by a timely Rule 59 motion, the notice of appeal is tolled and does not become effective to confer jurisdiction on the court of appeals until the entry of an order disposing of the Rule 59 motion.
90 F.3d 95, 98 (4th Cir. 1996).

[14] FED. R. APP. P. 4(a)(4)(A)(iv).

[15] *See* FED. R. APP. P. 4(a)(4)(B)(i) (notice of appeal becomes effective "when the order disposing of the last such remaining motion is *entered*" (emphasis added)); *cf. Burt*, 14 F.3d at 258 ("Under amended Rule 3(d), the district court is required to send a copy of any later docket entry in [plaintiff's] case to the court of appeals. Those docket entries will serve to advise this court of the date on which [plaintiff's] notice of appeal becomes effective.").

The Rosses contend that this conclusion is inaccurate, and cite to *Katz v. Berisford International*, *PLC*[16] for the proposition that Rule 4(a)(4) only applies to extend the appellate deadline for "parties."  In *Katz*, two creditors sought to intervene for the purpose of moving to amend a final judgment pursuant to Rule 59(e) or 60(b).  They filed their motion to intervene, along with a motion to alter or amend judgment, on September 11, 2000.  Before the district court ruled on their motion to intervene, the defendant filed a timely notice of appeal.

The district court found that because "the filing of a notice of appeal divests [a] district court of jurisdiction and transfers it to the Court of Appeals . . . this court does not have jurisdiction to decide this motion to intervene."[17]  The court then rejected the intervenors' contention that their motion to alter or amend tolled the effectiveness of the notice of appeal.  In so holding, the court found that Rule 4(a)(4)(B)(i) specifically provides that a notice of appeal will be tolled only if a "party" files a motion to alter or amend.  The court then observed that Rule 4(a)(4)(B)(i) "does not apply to [the motion to intervene] because the Intervenors are not yet 'parties' to the case."[18]  The court concluded: "For the Intervenors to file a Rule 59 motion,

---

[16] No. 96-CIV-8695, 2000 WL 1760965 (S.D.N.Y. Nov. 30, 2000).

[17] *Id.* at *2 (citing *Nicol*, 743 F.2d at 299).

[18] *Id.*

11

this Court would have to grant their Rule 24(a) motion, which it cannot do because it does not have jurisdiction to decide that motion."[19]

Unlike the Rule 59(e) motion in *Katz*, which was filed by *non-parties* who were seeking to intervene, the Rule 59(e) motion in this case was filed by a *party*, Kent Mathews.  Consequently, we find that *Katz* is inapplicable here, and conclude that the district court properly had jurisdiction to deny Allstate's motion to intervene.[20]

IV

We turn to the contention that the district court erred in denying Allstate's motion to intervene as of right.  We review denials of intervention of right *de novo*.[21]

In the absence of a federal statute conferring an

---

[19] *Id.*

[20] In the alternative, Allstate urges that the district court retained jurisdiction to rule on its motion to intervene because such action would "aid the appeal."  This argument finds support in Professors Wright, Miller and Cooper's treatise on federal practice:

> There is a split of opinion on the question whether the district court loses jurisdiction to grant intervention to appeal after a notice of appeal has been filed.  Although a notice of appeal ousts district court jurisdiction for most purposes, it would be better to recognize that the district court can act.  The district court need not be given a preliminary education about the case to support an intelligent ruling, and its action is in support of the appeal process, not in derogation of it.

15A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3902.1 (2d. ed. 1992) (citations omitted).  Although not without force, we need not reach this argument here as the district court retained jurisdiction following the filing of Kent Mathews' Rule 59 motion to alter or amend judgment.

[21] *Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.*, 332 F.3d 815, 822 (5th Cir. 2003).

unconditional right to intervene, a motion to intervene as of right is governed by Federal Rule of Civil Procedure 24(a)(2).  A motion to intervene under Rule 24(a)(2) is proper when:

> (1) the motion to intervene is timely; (2) the potential intervener (sic) asserts an interest that is related to the property or transaction that forms the basis of the controversy in the case into which she seeks to intervene; (3) the disposition of that case may impair or impede the potential intervener's ability to protect her interest; and (4) the existing parties do not adequately represent the potential intervener's interest.[22]

Although failure to satisfy any one element precludes the applicant's right to intervene, we have noted that "the inquiry under subsection (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application," and concluded that "intervention of right must be measured by a practical rather than technical yardstick."[23]  Intervention should generally be allowed  where "no one would be hurt and greater justice could be attained."[24]

A

Our first task is to determine whether Allstate's motion to intervene was timely.  While we normally review a district court's finding of timeliness for an abuse of discretion, we review the timeliness element *de novo* where, as here, the district court fails

---

[22] *Saldano v. Roach*, 363 F.3d 545, 551 (5th Cir. 2004).

[23] *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996) (internal quotation marks and citations omitted).

[24] *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (internal quotation marks and citation omitted).

13

to articulate reasons for its timeliness determination.[25]

In *Stallworth v. Monsanto* Co.,[26] we set forth four factors that must be considered when evaluating whether a motion to intervene was timely:

> Factor 1.  The length of time during which the would-be intervenor actually or reasonably should have known of his interest in the case before he petitioned for leave to intervene.
> \*\*\*\*\*
> Factor 2.  The extent of prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case.
> \*\*\*\*\*
> Factor 3.  The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied.
> \*\*\*\*\*
> Factor 4.  The existence of unusual circumstances militating either for or against a determination that the application is timely.[27]

Although these factors give structure to our timeliness analysis, we have explicitly observed that the timeliness analysis remains "contextual," and should not be used as a "tool of retribution to punish the tardy would-be intervenor, but rather [should serve as] a guard against prejudicing the original parties by the failure to apply sooner."[28]  With this caveat in mind, we examine each of the

---

[25] *See John Doe No. 1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001); *Edwards*, 78 F.3d at 1000.

[26] 558 F.2d 257 (5th Cir. 1977).

[27] *Id.* at 264-66 (italics omitted).

[28] *Sierra Club*, 18 F.3d at 1205.

14

*Stallworth* factors in turn.

1

The first *Stallworth* factor "focuses on the time lapse between the applicant's receipt of actual or constructive knowledge of his interest in the litigation and the filing of his motion for intervention."[29] The Rosses contend that this factor cuts against Allstate because it was aware of its interest in the present suit at the latest on March 12, 2002, when it filed its declaratory judgment action, yet waited until September 3, 2003, to file its motion to intervene. In addition, the Rosses argue that Allstate's motion is untimely *ex lege* because it was filed after the district court entered its final judgment. Allstate contends that its motion to intervene was timely as it was filed as soon as practicable after its insured was held liable and within the time for filing an appeal from the judgment.

While it is true that motions for intervention filed after judgment is entered are frequently denied as untimely,[30] we have found that there are no "absolute measures of timeliness,"[31] and have allowed post-judgment intervention of right in some cases.[32]

---

[29] *Edwards*, 78 F.3d at 1000.

[30] *See id.* at 1001 (collecting cases).

[31] *Sierra Club*, 18 F.3d at 1205.

[32] *See, e.g., Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203-04 (5th Cir. 1992); *Baker v. Wade*, 769 F.2d 289, 291 (5th Cir. 1985) (en banc), *rev'd on other grounds by Lawrence v. Texas*, 539 U.S. 558 (2003).

Indeed, in *Stallworth* we observed that "whether the request for intervention came before or after the entry of judgment [is] of limited significance," noting that intervention could be allowed post-judgment provided that the rights of existing parties were not prejudiced and intervention did not interfere with the orderly processes of the court.[33]

A common example of post-judgment intervention that satisfies these criteria is intervention for the purpose of appealing a decision that the existing parties to a suit have decided not to pursue.[34] In *United Airlines v. McDonald*,[35] the Supreme Court found that a flight attendant's post-judgment motion to intervene for the purpose of appealing the district court's denial of class certification was timely when she filed her motion "as soon as it became clear . . . that [her] interests . . . would no longer be protected by the named class representatives."[36] The district court had denied class certification, and after securing a judgment for damages nearly three years later, the named class representatives

---

[33] 558 F.2d at 266; *see also McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1072 (5th Cir. 1970) (noting that while it is true that post-judgment intervention is normally looked upon with a "jaundiced eye," the "rationale which seems to underlie this general principle . . . is the assumption that allowing intervention after judgment will (1) prejudice the rights of the existing parties to the litigation or (2) substantially interfere with the orderly processes of the court.").

[34] *See* 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 24.24[3] (3d. ed. 1998).

[35] 432 U.S. 385 (1977).

[36] *Id.* at 395.

16

opted not to appeal the district court's class certification ruling. The Court observed that its decision to allow the flight attendant to intervene post-judgment was consistent with the decisions of several federal courts, finding that in each case the "critical inquiry . . . is whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment."[37] Specifically, the Court found that the flight attendant had "filed her motion within the time period in which the named plaintiffs could have taken an appeal."[38]

In this case, Allstate sought to intervene for the purpose of appealing an adverse judgment against its insured that it rightly believed would not be appealed by the existing parties. Allstate filed its motion promptly after the district court entered its amended final judgment, and within the time in which a named party could have taken an appeal. Because Allstate sought to intervene solely for the purpose of taking an appeal, granting its motion would not have affected the orderly processes of the court. Further, we note that although Allstate was aware that its interests were at stake long before it sought to intervene, intervention prior to judgment would have been pointless as Allstate's interests were being adequately represented by counsel

---

[37] *Id.* at 395-96.

[38] *Id.* at 396; *see also* MOORE, *supra* note 34, ¶ 24.24[3] ("The general rule is that a post-judgment motion to intervene is timely if filed within the time allowed for the filing of an appeal.").

for Kent Mathews--counsel that was being provided by Allstate.[39] Given these circumstances, we find that Allstate's motion to intervene was not impermissibly tardy.

2

The second *Stallworth* factor requires that we determine the extent to which the Rosses will be prejudiced by Allstate's failure to seek intervention at an earlier time. "This factor is concerned only with the prejudice caused by the applicants' delay, not that prejudice which may result if intervention is allowed."[40]

The Rosses claim that if Allstate is allowed to intervene, they will suffer a "mountain of prejudice" in the form of wasted resources and delay caused by frivolous motions and "this frivolous appeal." These inconveniences, while not insubstantial, are all the result of Allstate's decision to appeal both the district court's denial of its motion to intervene and the amended judgment. In order to show prejudice, the Rosses must point to results that would not have obtained but-for Allstate's failure to file its motion to intervene *earlier*.[41] The inconveniences cited by the

---

[39] In *Sierra Club v. Espy*, we noted that "[c]ourts should discourage premature intervention that wastes judicial resources. A better gauge of promptness is the speed with which the would-be intervenor acted when it became aware that its interests would no longer be protected by the original parties." 18 F.3d at 1206 (internal citation omitted).

[40] *Edwards*, 78 F.3d at 1002 (citing *Stallworth*, 558 F.2d at 265); *accord Ceres Gulf*, 957 F.2d at 1203; *Sierra Club*, 18 F.3d at 1206.

[41] *See John Doe No. 1*, 256 F.3d at 378; *Stallworth*, 558 F.2d at 265 ("[T]o take any prejudice that the existing parties may incur if intervention is allowed into account under the rubric of timeliness would be to rewrite Rule 24 by creating an additional prerequisite to intervention as of right.").

18

Rosses are those commonly associated with defending a ruling or judgment on appeal, and would have arisen regardless of whether Allstate sought to intervene before the district court entered its amended judgment. Accordingly, we find that Rosses will suffer no prejudice as a result of Allstate's failure to seek intervention at an earlier time.

3

The third *Stallworth* factor "focuses on the prejudice the potential intervenor would suffer if not allowed to intervene."[42] The Rosses argue that Allstate will suffer no prejudice if not allowed to intervene because it has no interest at stake in the present suit. Specifically, the Rosses contend that Allstate's interest in contesting coverage under the policy cannot be impaired by the dictum in the district court's order referencing coverage because such dictum is non-binding. The Rosses also argue that Allstate's interest in defending its insured will not be impaired because it abandoned Kent Mathews by failing to post a supersedeas bond in the full amount of the judgment. Finally the Rosses note that Allstate's attempted bond is not at risk because it was rejected by the district court.

These contentions ignore the prejudice that Allstate will suffer if it is not allowed to contest a judgment against its insured that may expose it to significant liability both in a

---

[42] *John Doe No. 1*, 256 F.3d at 378-79.

subsequent coverage suit and in a suit for extra-contractual damages. Allstate's interest in protecting itself from liability by minimizing the liability of its insured is strong, particularly in light of the fact that Allstate provided Mathews with a defense in this case subject to a reservation of rights and is bound by the district court's judgment.[43] Allstate will suffer considerable prejudice if it is denied the opportunity to challenge this judgment on appeal.

4

Under the fourth *Stallworth* factor, we must ascertain whether any unusual factors weigh in favor of a finding of timeliness. We find that the Kent Mathews' decision to abandon his appeal and fire his appellate counsel at the behest of the Rosses, and the Rosses' subsequent attempt to deny Allstate the opportunity to seek appellate review of the district court's amended judgment constitutes an unusual circumstance favoring a finding of timeliness in this case.

5

In sum, we find based upon our analysis of the *Stallworth* factors as applied to the facts of this case that Allstate's motion to intervene was timely.

B

The second element that an applicant must satisfy in order to

---

[43] *See infra* Part IV.B.

intervene as of right is the assertion of an interest related to the property or transaction at issue in the case. We have held that in order to meet this requirement, an applicant must point to an interest that is "direct, substantial, [and] legally protectable."[44] This requires a showing of something more than a mere economic interest; rather, the interest must be "one which the *substantive law* recognizes as belonging to or being owned by the applicant."[45] In addition, "the intervenor should be the real party in interest regarding his claim."[46] Despite these requirements, we have observed that "the interest 'test' is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."[47]

---

[44] *See New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc) (internal quotation marks and citation omitted).

[45] *Id.* at 464.

[46] *Saldano*, 363 F.3d at 551. We articulated the "real party in interest" requirement in *New Orleans Public Service, Inc.*, 732 F.2d at 464, in which we observed that the real party in interest requirement of FED. R. CIV. PROC. 17(a) applies to potential intervenors as well as parties. Our application of this rule here is complicated by the fact that "Rule 17(a) applies only to those who are asserting a claim and thus is of most importance with regard to *plaintiffs*." 6A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1543 (1990) (emphasis added). With respect to a potential intervenor seeking to *defend* an interest being attacked by a plaintiff in a lawsuit, we have observed that the intervenor is a real party in interest when the suit was intended to have a "direct impact" on the intervenor. *See Sierra Club v. Glickman*, 82 F.3d 106, 109 (5th Cir. 1996) [hereinafter *Glickman*]. Given the terms of the Rosses' agreement with Kent Mathews, it is beyond peradventure that the present litigation is designed to have a direct impact on Allstate.

[47] *Espy*, 18 F.3d at 1207 (some internal quotation marks omitted) (quoting *Ceres Gulf*, 957 F.2d at 1203 n.10).

21

Allstate argues that it must be allowed to intervene in order to appeal a substantial judgment against its insured; that it is a real party in interest up to the $300,000 limit of Kent Mathews' insurance policy. Although a close call, we are persuaded that this interest is sufficient to meet the second requirement of intervention under Rule 24(a)(2). Without question, an insurer has a financial stake in securing a favorable outcome for its insured in a lawsuit alleging potentially covered claims. This financial interest is particularly strong when, as here, the insurer has been given an opportunity to defend the suit, and therefore is in privity with the insured as to the ensuing judgment.[48] For this reason, insurers frequently have a contractual right and duty to defend their insureds against a suit alleging a covered claim.

Recognizing this, the Texas Supreme Court has found that a liability insurance policy "may grant the insurer the right to take 'complete and exclusive control' of the insured's defense."[49] However, when an insurer offers to defend pursuant to a reservation of rights, thereby preserving its ability to raise coverage defenses, the insured may properly refuse the tender of defense and

---

[48] *See Ridgway v. Gulf Life Ins. Co.*, 578 F.2d 1026, 1029 (5th Cir. 1978) (finding that a liability insurer with a right to defend and adequate notice of a claim, while "not necessarily a formal party to the suit," is not "a stranger to the judgment," and concluding that the "contractual relation of liability and social policy supply the necessary privity of party between insured and insurer to bind the latter").

[49] *State Farm Mut. Auto. Ins. Co. v. Traver*, 980 S.W.2d 625, 627 (Tex. 1998).

"choose to defend the suit personally."[50] An insurer that reserves its rights does not surrender its interest in minimizing the liability of its insured. Accordingly, the insurer may still assume the defense of its insured if the insured so permits. Further, an insured who rejects an insurer's offer of a qualified defense must either reach a reasonable settlement or provide a reasonable defense in order for its insurer to be bound by any ensuing judgment.[51]

A more difficult question is whether the insurer's interest in minimizing its insured's liability is sufficiently *direct* to permit intervention as of right when the insurer defends under a reservation of rights. Two of our sister circuits have answered this query in the negative. In *Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.*,[52] the Second Circuit examined whether an insurer had the right to intervene in an ongoing lawsuit filed against its insured. The insurer was defending under a reservation of rights, and sought to intervene

---

[50] *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir. 1991); *see also Housing Auth. of Dallas v. Northland Ins. Co.*, 333 F. Supp. 2d 595, 600 (N.D. Tex. 2004); *Am. Eagle Ins. Co. v. Nettleton*, 932 S.W.2d 169, 174 (Tex. App.--El Paso 1996, writ denied).

[51] *See U.S. Aviation Underwriters, Inc. v. Olympia Wings, Inc.*, 896 F.2d 949, 955 (5th Cir. 1990) (holding that, under Texas law, an insurer that offers to defend under a reservation of rights is not bound by an *unreasonable* settlement reduced to a consent judgment); *Britt v. Cambridge Mut. Fire Ins. Co.*, 717 S.W.2d 476, 482 (Tex. App.--San Antonio 1986, writ ref'd n.r.e.) (holding that doctrine of collateral estoppel may not be raised by insured to bind insurer to a judgment of liability against the insured when the insured failed to conduct a reasonable defense and colluded with the plaintiff to defraud the insurer).

[52] 725 F.2d 871 (2d Cir. 1984).

for the purpose of submitting interrogatories instructing the jury to specify the basis for any damages it awarded.[53]  The court identified the "critical inquiry" as whether the insurer possessed a sufficient interest in the suit against its insured.  Noting that an interest sufficient to justify intervention under Rule 24(a) "must be direct, as opposed to remote or contingent," the court found that an insurer defending under a reservation of rights has no direct interest in a suit against its insured for which it may ultimately be liable.[54]  The court explained that the insurer's interest in reducing or even eliminating its own liability, while implicated by the suit, was too remote because it was dependent upon two contingencies: a jury verdict finding the insured liable for damages; and an adverse coverage determination in a future lawsuit.[55]

In *Travelers Indemnity Co. v. Dingwell*,[56] the First Circuit affirmed the denial of a motion to intervene as of right filed by a group of insurers seeking to oppose entry of a consent judgment against their insured when the insurers had reserved the right to

---

[53] In support of its motion to intervene, the insurer argued that "it was critical to 'know with certainty the exact dollar amount of the damages assessed against [the insured] for which [the insured] claims to be entitled to indemnification from [the insurer],' in the event that the jury found for [the plaintiff]."  *Id.* at 873.

[54] *Id.* at 874-75 (citing *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 154 (1967) (Stewart, J., dissenting)).

[55] *Id.* at 875.

[56] 884 F.2d 629 (1st Cir. 1989).

deny coverage. Addressing the insurers' interest in minimizing the liability of their insured, the court conceded that "[t]here can be no dispute that an insurer has a direct interest in a lawsuit brought by an injured party against its insured when the insurer admits that the claim is covered by the policy in question."[57] The court observed, however, that "[w]hen the insurer offers to defend the insured but reserves the right to deny coverage . . . the insurer's interest in the liability phase of the proceeding is contingent on the resolution of the coverage issue."[58] The court rejected the notion that this position was "overly 'legalistic' or 'mechanical,'" noting that it reflected the "well-established policy that an insurer who reserves the right to deny coverage cannot control the defense of a lawsuit brought against its insured by an injured party."[59] Elaborating on this proposition, the court observed that "[a]llowing the insurer to intervene to protect its contingent interest would allow it to interfere with and in effect control the defense. Such intervention would unfairly restrict the insured, who faces the very real risk of an uninsured liability, and grant the insurer 'a double bite at escaping liability.'"[60]

---

[57] *Id.* at 638.

[58] *Id.* (citing *Restor-A-Dent Dental Laboratories, Inc.*, 725 F.2d at 874-76).

[59] *Id.* at 638-39 (quoting *Guar. Nat'l Ins. Co. V. Pittman*, 501 So. 2d 377, 384 (Miss. 1987)).

[60] *Id.* (citation omitted); *accord Nieto v. Kapoor*, 61 F. Supp. 2d 1177, 1192-93 (D.N.M. 1999); *Chrysler Corp. v. Haden Uniking Corp.*, 158 F.R.D. 405, 407-08 (N.D. Ill. 1994).

We find both *Restor-A-Dent* and *Travelers* to be distinguishable from the facts of the present case in two significant ways. First, unlike the insurers in *Restor-A-Dent* and *Travelers* which sought to intervene *before* a judgment was entered holding their insureds liable, Allstate seeks to intervene for the purpose of appealing an *existing* judgment holding its insured liable for $10 million. Importantly, by seeking to intervene solely to appeal the judgment, Allstate is not attempting to "interfere" with the defense of its insured. There is no danger that Allstate will attempt to steer the jury towards a verdict holding its insured liable on non-covered grounds, or interject interrogatories harmful to its insured's interests. Rather, Allstate's interest in minimizing its potential liability exposure is aligned with Mathews' interest in avoiding a $10 million judgment.

Second, although some contingency remains in that Allstate may still avoid liability if it prevails in its coverage action, we find this contingency insufficient to preclude intervention. In both *Restor-A-Dent* and *Travelers*, the insurers sought to intervene when two contingencies separated them from possible liability: a judgment against their insureds, *and* an adverse judgment in a subsequent coverage suit. Here, Allstate is already bound by the present judgment, and may not re-litigate Mathews' liability in a subsequent lawsuit. All that remains in order for Allstate to be fully liable for the judgment up to its policy limits is a finding

26

of coverage or liability in a suit on extra-contractual damages.[61]

Further, although there is a dearth of authority on the question of whether an insurer that reserves its rights has a sufficiently direct interest to intervene as of right in a suit against its insured for the purpose of appealing the judgment, a handful of courts have held that insurers may intervene to contest various aspects of judgments entered against their insureds following a reservation of rights.[62]  These cases point up the absence of a monolithic opposition to insurers intervening in cases brought against their insureds, and are consistent with the toleration shown in our case law for some degree of contingency in

---

[61] In its order addressing the Rosses' motion to amend the judgment, the district court found that Mathews was vicariously liable for the acts of his son, and that "the act of delegation of authority by Kent Mathews was negligent, as found by the jury, and moreso an accident as that term is defined in the policy of insurance." *Ross*, No. H-01-1311, at 3 (unpublished order).  Although dictum, this statement is significant because Allstate's declaratory judgment suit regarding coverage is pending before the same district court that authored the order.

[62] See *Bridge v. Air Quality Technical Servs., Inc.*, 194 F.R.D. 3, 7 (D. Me. 1999) (holding that an insurer had a sufficiently direct interest to intervene under Rule 24(a) at the damages phase of a trial following entry of default judgment against its insured); *Campbell v. Plank*, 133 F.R.D. 175, 176 (D. Kan. 1990) (holding that an insurer had an interest sufficient to support intervention under Rule 24(a) when both the plaintiff and the defendant in the underlying action were insured by the insurer, and the parties entered into a collusive agreement whereby the defendant agreed not to oppose entry of judgment against him in exchange for the plaintiff's agreement to limit his recovery to insurance proceeds and amounts received as damages for any extra-contractual claims);  *see also Davila v. Arlasky*, 141 F.R.D. 68, 72-73 (N.D. Ill. 1991) (noting that the word "contingent" in cases such as *Restor-A-Dent* and *Travelers* "is often used as a proxy for evaluating the importance of the interest and the likelihood that it could be impaired," and concluding that "a close examination of the facts is more helpful to determine whether there is a sufficient interest for 24(a) intervention than categorizing is").

the interests of persons seeking intervention as of right.[63]

Finally, we note that the Rosses have made Allstate the central focus of their collection efforts by agreeing to delay executing on Kent Mathews' property in exchange for a full assignment of his rights against Allstate. We also recognize that this assignment transferred not only Mathews' right to collect from Allstate under his insurance contract, but also any claim he may have relating to Allstate's refusal to settle within policy limits. Thus, Allstate has a second interest at stake in the underlying litigation: minimizing its potential exposure in a bad faith settlement practices claim. While this interest is also contingent upon an adverse finding in a separate suit, Allstate may minimize or eliminate this exposure by contesting the judgment against Mathews on appeal.

In sum, we conclude that Allstate has a sufficient interest in the present suit to merit intervention as of right for the purpose of appealing the judgment against its insured.

C

---

[63] See *Glickman*, 82 F.3d at 109-10 (holding that the interest of farmers in drawing water from an aquifer was sufficient to justify intervention as of right by Farm Bureau in a suit brought by the Sierra Club against the USDA seeking to enjoin the expenditure of "any funds to the farmers that directly or *indirectly* support pumping from the [a]quifer" (emphasis added)); *Edwards*, 78 F.3d at 1004 (holding that interest of police officers in having equal access to a promotion system was sufficient to justify intervention as of right by officers' associations and unions to contest entry of a consent decree in an employment discrimination case against the City of Houston requiring a series of remedial promotions for members of certain minority groups); *see also Ceres Gulf*, 957 F.2d at 1203 (noting that Rule 24(a)(2) "property or transaction" need not be defined in an unduly narrow fashion).

The third criterion that an applicant for intervention must satisfy is that the disposition of the case into which he seeks to intervene "may, as a practical matter, impair or impede his ability to protect [that] interest."[64]   The Rosses argue that a judgment against Mathews in no way impairs or impedes Allstate's ability to protect its interest in minimizing its liability because Allstate may still avoid liability entirely by prevailing in its coverage suit.   This argument conflates Allstate's interest in avoiding coverage with its interest in minimizing or eliminating the liability of its insured.

An insurer may avoid liability for a claim made against its insured in one of two ways: the insurer may either defeat the claim on its merits, or establish that coverage is not available for the claim.[65]   By effectively settling with the Rosses following entry of judgment against him, Mathews eliminated any possibility that Allstate could avoid liability by challenging the judgment against its insured on appeal.   This result leaves Allstate with potential liability exposure in its coverage suit up to $300,000, and with potential liability exposure for additional amounts in a bad faith

---

[64] *Sierra Club*, 18 F.3d at 1207; *see John Doe No. 1*, 256 F.3d at 380.

[65] *See Ideal Mut. Ins. Co. v. Myers*, 789 F.2d 1196, 1205-06 (5th Cir. 1996) (Higginbotham, J., concurring in part and dissenting in part) (noting that, prior to the execution of a settlement agreement between the plaintiff and the insured, the insurer could have avoided liability both by establishing non-coverage *and* by showing that its insured was not liable); *see also* Douglas R. Richmond, *Walking a Tightrope: The Tripartite Relationship Between Insurer, Insured, and Insurance Defense Counsel*, 73 NEB. L. REV. 265, 269 (1994) ("Because of its financial interest in the effective resolution of a claim, the insurer has a contractual right to control its insured's defense.").

suit--all without being afforded the opportunity to appeal a judgment in a suit which it defended. These large stakes make clear that the disposition of the underlying suit has, at the very least, the potential to impair Allstate's interest.

D

The final criterion that a potential intervenor must satisfy in order to intervene as of right is that "the existing parties do not adequately represent" his interest.[66] We have described this burden as "minimal," noting that a potential intervenor need only show that "representation by the existing parties *may* be inadequate."[67] We find that Allstate has met this burden by demonstrating that Mathews both fired counsel provided to him by Allstate and abandoned his appeal of the district court's judgment. Although these events occurred after the district court denied Allstate's motion to intervene, the motion was premised in part on Allstate's well-founded belief that Mathews had ceased to cooperate and would not pursue an appeal. This is sufficient to meet Allstate's minimal burden of showing inadequate representation.

E

In sum, we hold that the district court erred in denying

---

[66] *John Doe No. 1*, 256 F.3d at 380 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *Espy*, 18 F.3d at 1207).

[67] *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 425 (5th Cir. 2002); *but see Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir. 1984) ("However 'minimal' this burden [of showing inadequate representation] may be, it cannot be treated as so minimal as to write the requirement completely out of the rule.").

Allstate's motion to intervene as of right.  Accordingly, we now turn to the merits of Allstate's appeal.[68]

V

As we have already noted, Allstate challenges the amended final judgment on a number of grounds.[69]  We will limit our analysis to Allstate's claim that the district court was incorrect in its assessment that Mathews should be held vicariously liable for the criminal acts of his son.

In their pleadings and at trial, the Rosses sought to hold Kent Mathews liable on both negligence and agency theories.  At the charge conference, the district court proposed special interrogatories inquiring (1) whether Mathews delegated authority over his property to his son on the night of the cross-burning; (2) whether this delegation constituted negligence; and (3) whether this negligence was a proximate cause of the Rosses' damages.  The Rosses objected and requested a definition of "authority" as used in the context of a principal-agent relationship.  Mathews' attorney objected on grounds that an agency question must be

---

[68] The Rosses claim that the only issue properly before us is intervention, and that Allstate cannot appeal the judgment because it is not a party to it. We are cognizant of the "well-settled" rule that "one who is not a party to a lawsuit, or has not properly become a party, has no right to appeal a judgment entered in that suit." *Edwards*, 78 F.3d at 993.  In this case, however, remand to the district court would be futile given that Allstate's motion to intervene was for the sole purpose of taking an appeal.  As the issues have been fully briefed and argued, we will proceed to the merits.  *See Ceres Gulf*, 957 F.2d at 1204-05 (reversing district court's denial of intervention as of right and reaching the merits of the intervenor's claim on appeal).

[69] *See supra* Part II.

31

accompanied by instructions regarding the elements of agency as well as a question asking whether the agent's actions came within the scope of authority granted. The court responded:

> The question is whether or not--The threshold entry question is whether or not there was negligence in granting authority with whatever knowledge Kent Mathews had, granting any authority to his son to do anything as it relates to handling the property. That's a threshold question.
>
> It doesn't require a finding that there was some use of that property that was improper, because the only question that's being asked--And it doesn't require any agency relationship. I don't have to establish an agency relationship to be negligent in handing something or passing something off to someone.
>
> That's my view of negligence. Negligence is a duty, a breach of duty and damages. What is the negligence? The authority given to his son should or should not have been given to him. That's the question that's being raised, the negligent act. The authority given to him either should or should not have been given to him.
>
> If it should not have been given to him, was there a duty not to and was there a breach of that duty? That's what I'm raising here in this particular interrogatory. It doesn't go to this agency relationship or theory.

The jury answered questions 1 and 2 in the affirmative, but returned a negative answer to question 3. Alleging that the jury's affirmative answer to question 1 established a basis for finding that Mathews delegated actual authority over his house to his son on the night of the cross-burning, the Rosses moved the court to enter judgment holding Mathews liable under a vicarious liability theory. The court entered judgment on the verdict for Mathews, holding that he was not liable under either a negligence or agency

32

theory because his "negligence was not a proximate cause of the harm inflicted on the plaintiffs," and his son's wrongful acts were not within the scope of delegated authority.[70]

The Rosses subsequently filed a Rule 59(e) motion requesting that the court alter its judgment to hold Mathews liable under an agency theory. The court granted this motion, and entered an amended final judgment in which it held that "it is undisputed that Wayne Mathews' use of the Mathews' property was within the scope of authority given by Kent Mathews'."[71] In its order on the Rosses' motion to amend, the court observed that its prior judgment had "erroneously circumscribed and omitted a treatment of Kent Mathews' conduct under a vicarious liability theory."[72] The court then detailed evidence that Wayne Mathews regularly consumed alcohol, had been arrested for consuming alcohol while in high school and received counseling, and "had many problems associated with alcohol

---

[70] *Ross*, No. H-01-1311, at 2 (unpublished final judgment). Because a question regarding scope of authority was not submitted to the jury and no objection was lodged, the court's finding on this question was made pursuant to Rule 49(a) which provides: "As to an issue omitted [from the jury instructions] without . . . demand the court may make a finding." FED. R. CIV. P. 49(a). We recognize, based on the colloquy between the attorneys and the court at the charge conference, that the interrogatories submitted to the jury contained no questions relating to the Rosses' agency theory, raising the question of whether this theory was completely waived. *Compare Newberry v. E. Tex. State Univ.*, 161 F.3d 276, 281 (5th Cir. 1998) (failure to object to the omission of a claim from the jury instructions results in waiver), *with MBank Fort Worth, N.A. v. Trans Meridian, Inc.*, 820 F.2d 716, 722-24 (5th Cir. 1987) (finding that a court considered and rejected a theory omitted from the jury instructions pursuant to Rule 49(a)). We need not pause before this tiger in the reeds beside our path, however, given that we can resolve this case on different grounds.

[71] *Ross*, No. H-01-1311, at 2 (unpublished amended final judgment).

[72] *Ross*, No. H-01-1311, at 1-2 (unpublished order).

33

that were ignored by Kent Mathews."[73]  "Hence," the court observed, "the jury could have inferred that Kent Mathews knew that his son was not a person to whom he should grant authority or control over his property."[74]  The court then concluded that "Kent Mathews is, as a matter of law, vicariously liable for delegating authority over his premises and materials to an untrustworthy son."[75]

We will "generally review a decision on a motion to alter or amend judgment under Rule 59(e) for abuse of discretion."[76]  However, "[t]o the extent that a ruling was a reconsideration of a question of law . . . the standard of review is *de novo*."[77]  A motion to alter or amend judgment must "clearly establish either a manifest error of law or fact or must present newly discovered evidence.  These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued.  Moreover, they cannot be used to argue a case under a new legal theory."[78]  A district court abuses its discretion if it "bases its decision on an erroneous view of the law or on a clearly erroneous

---

[73] *Id.* at 3.

[74] *Id.*

[75] *Id.*

[76] *Pioneer Natural Res. USA, Inc. v. Paper, Allied Indus. & Energy Workers Int'l Union Local*, 328 F.3d 818, 820 (5th Cir. 2003).

[77] *Id.*

[78] *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (internal quotation marks and citation omitted).

assessment of the evidence."[79]

Under Texas law, a principal "is vicariously liable for the torts of [his agents] committed in the course and scope of their employment."[80] "To find that the employee acted within the scope of employment, the action of the employee must be: (1) within the general authority given him; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed."[81]  Moreover, "[t]o be within the scope

---

[79] *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005) (internal quotation marks and citation omitted); *see Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) ("Because a court, by definition, abuses its discretion when it makes an error of law, an appellate court may correct such mistakes.").

[80] *GTE S.W., Inc. v. Bruce*, 998 S.W.2d 605, 617 (Tex. 1999); *see Medina v. Herrera*, 927 S.W.2d 597, 601 (Tex. 1996) ("Generally, a master is vicariously liable for the torts of its servants committed in the course and scope of their employment."); RESTATEMENT 2D AGENCY § 219(2)(b) (1958) ("A master is not subject to liability for the torts of his servants acting outside the scope of their employment unless: . . . the master was negligent or reckless.").  Under § 219 of the Restatement, "[l]iability exists only if *all the* requirements of an action of tort for negligence exists."  *Id.* at § 213 cmt. a (emphasis added).

[81] *Williams v. United States*, 71 F.3d 502, 506 (5th Cir. 1995) (citation omitted); *see Leadon v. Kimbrough Bros. Lumber Co.*, 484 S.W.2d 567, 569 (Tex. 1972) ("It is not essential that the negligent act or omission should have been expressly authorized by the employer so long as it is in furtherance of the employer's business and for the accomplishment of the object for which the employee is employed."); *Arbelaez v. Just Brakes Corp.*, 149 S.W.3d 717, 720 (Tex. App.--Austin 2004, no pet.) ("To ultimately prove that an employee acted within the course and scope of employment, however, [plaintiff] must [establish] that the act was (1) within the general authority given to the employee; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed."); *Millan v. Dean Witter Reynolds, Inc.*, 90 S.W.3d 760, 767-68 (Tex. App.--San Antonio 2002, pet. denied) ("To determine whether an employee's acts are within the scope of his or her employment, we ask whether the employee's actions fall within the scope of the employee's general authority, are in furtherance of the employer's business, and are for the accomplishment of the object for which the employee was hired."); *Chesshir v. Sharp*, 19 S.W.3d 502, 504 (Tex. App.--Amarillo 2000, no pet.) ("Whether one is acting within the scope of his employment depends upon whether the general act from which injury arose was in furtherance of the employer's business and for the accomplishment of the object for which the employee was employed.").

35

of employment, the conduct must be of the same general nature as that authorized or incidental to the conduct authorized."[82]  As a general rule, "[c]ourse and scope of employment is . . . a fact issue like negligence or proximate cause."[83]  However, scope of authority may be a question of law in the absence of disputed questions of fact.[84]

Assuming *arguendo* that Wayne Mathews was Kent Mathews' agent for the purpose of "wrapping things up" around the Mathews' residence on the night of the cross-burning, the record is devoid of facts suggesting that Wayne acted within the scope of that authority when he participated in the cross-burning.  Kent Mathews' testimony clearly demonstrates that when he told Wayne to "wrap things up," he intended for Wayne to send his friends home.  Any suggestion that he implicitly gave Wayne authority to construct a large wooden cross on his lawn, transport that cross to the home of an African-American family, and set it on fire is the height of absurdity.  The fact that Mathews knew or should have known of his son's difficulties with alcohol does not alter this analysis; that Kent Mathews may have been negligent in delegating authority over his property to an untrustworthy son does not serve to expand the

---

[82] *Williams*, 71 F.3d at 506 (internal quotation marks and citations omitted).

[83] *Arbelaez*, 149 S.W.3d at 720.

[84] *See Gen. Prod. Co. v. Black Coral Invests.*, 715 S.W.2d 121, 123-24 (Tex. App.--Houston [14th Dist.] 1986, writ ref'd n.r.e.).

scope of authority given to encompass unimaginable criminal conduct wholly unrelated to the task assigned.

Relatedly, we have found that, under Texas law, an agent's "serious criminal activity" is almost never taken within the scope of authority granted by the principal:

> Indeed, an employee's willful and malicious actions made in the scope of his employment, or any acts which are so connected with and immediately grow out of another act of the employee imputable to the employer, are imputed to the employer *unless the employee's actions involve serious criminal activity*. Under the exception, an employer is not liable for the employee's intentional or malicious actions that are unforeseeable considering the employee's duties. Thus, even criminal acts can be in the course and scope and impute liability *if the acts are foreseeable considering the employee's duties*.[85]

There are no facts in the record suggesting that it was foreseeable to Kent Mathews that his son would commit an act of racial terrorism upon receipt of authority to "wrap things up." Indeed, the jury explicitly found that Wayne's acts were unforeseeable to Kent in its response to jury interrogatory 3.

Because the record contains no facts suggesting that Wayne Mathews' criminal activity was taken within the scope of authority granted him by Kent Mathews, we conclude that the district court's

---

[85] *Williams*, 71 F.3d at 506 n.10 (emphasis added) (citations omitted); *see also Hooper v. Pitney Bowes, Inc.*, 895 S.W.2d 773, 778 (Tex. App.--San Antonio 1995, writ denied) ("An exception to [the rule that a master is liable for his servant's willful or malicious acts taken within the scope of his employment], usually applied in cases involving serious criminal activity, is that an employer is not liable for intentional and malicious acts that are unforeseeable considering the employee's duties."); *Adami v. Dobie*, 440 S.W.2d 330, 334 (Tex. Civ. App.--San Antonio 1969, writ dism'd) ("A master is not liable for unauthorized intended tortious conduct of his servant, even when the act was done in connection with the servant's employment, where the wrongful act was unexpectable, in view of the duties of the servant.")

finding to the contrary was clearly erroneous.  Accordingly, the district court abused its discretion in granting the Rosses' Rule 59(e) motion to amend the judgment.

VI

For the foregoing reasons, both the order denying intervention and the amended final judgment are REVERSED and this case is REMANDED with instructions to enter a take-nothing judgment as to Kent Mathews.

REVERSED and REMANDED.