# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 18, 2017

Lyle W. Cayce
Clerk

No. 16-41495

PHUWADOL THAMATHITIKHUN; DESIREE THAMATHITIKHUN,

Plaintiffs - Appellants

v.

BANK OF AMERICA, N.A.; NEW PENN FINANCIAL, L.L.C.; BANK OF NEW YORK MELLON, Formerly Known As The Bank of New York, as Trustee for Certificateholders CWALT Inc. Alternative Loan Trust 2005-73CB, Mortgage Pass-Through Certificates, Series 2005-73CB,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:15-CV-390

Before KING, PRADO, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

The plaintiffs defaulted on their mortgage payments, and the mortgage servicer foreclosed. After the sale, the plaintiffs brought this suit against the defendants. The trial court rejected all claims. We AFFIRM.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-41495

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2005, the plaintiffs, Phuwadol and Desiree Thamathitikhun, executed a note for $138,800 and a deed of trust on property located in Whitehouse, Texas. The plaintiffs defaulted on the loan not long after its execution. Both plaintiffs' health problems contributed to the inability to stay current on the loan. Despite the difficulties during the first several years, there was no foreclosure.

After the plaintiffs missed their June 2013 payment, Bank of America, the original loan servicer, sent the plaintiffs a Notice of Default and Intent to Accelerate two months later. Initially, the plaintiffs were able to work out a repayment plan. Though making their first payment on November 8, they failed to make further payments.

In December 2013, Bank of America transferred the loan to Resurgent Mortgage Servicing, which later became part of Shellpoint Mortgage Servicing. During the transitions, the servicers sent the plaintiffs monthly statements and several notices that the loan was in default. Shellpoint also sent the plaintiffs a letter in May 2014 informing them that foreclosure proceedings "have or may soon commence." Foreclosure did not then begin, though, and two later foreclosure sales were postponed.

In September 2014, Shellpoint notified the plaintiffs that a foreclosure sale was scheduled for October 7. On October 3, four days before the scheduled foreclosure sale, the plaintiffs called Shellpoint and spoke with Grant Taylor, a Shellpoint customer-service representative. During the October 3 phone call, Taylor and Mrs. Thamathitikhun discussed the possibility of setting up a repayment plan. Taylor explained he would mail the repayment plan application documents to Mrs. Thamathitikhun and she would need to send the documents back along with additional information. Mrs.

2

No. 16-41495

Thamathitikhun's account manager would then review the application. The parties discussed the effect of this process on the foreclosure proceedings:

> [Mrs. Thamathitikhun:] Okay, and they're not going to foreclose on the house while we are doing this?
>
> [Taylor:] Right, once you get that in that's an active work out with the company. So once you have something active [—] a plan in place, then that avoids any type of foreclosure proceedings.
>
> [Mrs. Thamathitikhun:] Okay, so is it active at this point?
>
> [Taylor:] No. It's only active until we get the information back from you.
>
> [Mrs. Thamathitikhun:] Okay, because I don't know. They had sent me a letter last month that said that they were going to foreclose and I called and talked to the lady here at this number. And she was going to send me some stuff that I never got. And, I'm afraid that they are going to foreclose before I even get the information from you.
>
> [Taylor:] Right, you don't have a sale date so that's not an issue. Okay?
>
> [Mrs. Thamathitikhun:] There's not one now?
>
> [Taylor:] Exactly. So you are in good standing. As long as we get the information back. Now it does show that [it's] in foreclosure but you don't have a sale date. . . . Once you're on, officially, that plan, foreclosure proceedings are placed on hold.

The trial court found that "Taylor's statement that no foreclosure sale date was set was an error[.]" The foreclosure sale took place as scheduled on October 7. Bank of New York Mellon bid successfully for the property. The plaintiffs are involved in an eviction suit with Bank of New York Mellon in state court, but that case has been stayed pending resolution of this suit.

3

No. 16-41495

In March 2015, the plaintiffs filed their original petition in Texas state court against Bank of America, Bank of New York Mellon, and New Penn Financial, LLC.  New Penn Financial was doing business as Shellpoint Mortgage Servicing.  The defendants removed the case to the Eastern District of Texas and consented to the jurisdiction of a United States magistrate judge for all proceedings pursuant to 28 U.S.C. § 636(c).

The plaintiffs' live complaint alleged violations of the Real Estate Settlement Procedures Act, the Texas Debt Collection Practices Act, and the Fair Debt Collection Practices Act, as well as negligent misrepresentation, negligence, common-law fraud, "equitable relief," and a "suit to set aside trustee's deed."  The plaintiffs eventually reached an agreement with Bank of America to resolve the claims between them, causing Bank of America to be dismissed with prejudice.  The remaining defendants filed a motion for summary judgment, which the trial court granted in part and denied in part.  The trial court held a bench trial in April 2016 and rejected all of the plaintiffs' remaining claims.  After their various subsequent motions were denied, the plaintiffs appealed.

## DISCUSSION

After a judgment based on a bench trial, we review findings of fact for clear error but give *de novo* review to legal issues.  *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 262 (5th Cir. 2011).  Clear error exists as to trial judge findings if after we review all the evidence, we are "left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)).  We review the district court's decision regarding a motion under Rules 52(b) and 59 for abuse of discretion.  *United States v. Texas*, 601 F.3d 354, 362 (5th Cir. 2010).  "A district court abuses its discretion if it 'bases its decision on an

erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (quoting *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005)).

At trial, the plaintiffs argued the defendants were liable for Taylor's erroneous statement under various legal theories, but the court held that the plaintiffs failed to prove Taylor's statement caused the plaintiffs' alleged damages. The court found no evidence the plaintiffs could have remedied the default just days before foreclosure. The court noted several times that the plaintiffs had a contractual right under the deed of trust to reinstate the loan, but that right had already expired before Taylor told Mrs. Thamathitikhun that no foreclosure sale date was set.

The plaintiffs seize on the latter part of the trial court's analysis, arguing the court failed to appreciate that Mrs. Thamathitikhun discussed a repayment plan with Taylor, not reinstatement of the loan. The plaintiffs agree their contractual right to reinstate the loan had expired but argue they could have entered into a repayment plan to prevent foreclosure. Therefore, they submit that the trial court "misinterpreted the effect of the evidence" and "incorrectly reasoned that . . . [the plaintiffs] could not establish a causal link between Taylor's misrepresentation and [the plaintiffs'] damages[.]"

The plaintiffs made this argument to the trial court in a motion to alter or amend the judgment. The trial court noted that the possibility of postponing foreclosure after adoption of a repayment plan was a new theory presented for the first time in that motion. Generally, arguments not raised before entry of judgment are forfeited. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 344–45 (5th Cir. 2007). Regardless, the argument speculates that, but for Taylor's erroneous statement, the plaintiffs would have avoided foreclosure by entering a repayment plan. Yet plaintiffs acknowledge they had "no right" to enter into a repayment plan, which is "simply a forbearance that is offered

solely at the lender's discretion." Here, foreclosure proceedings were underway and a sale date was set. There was no evidence that the plaintiffs would have filled out and returned the required repayment plan application or that the bank would have approved the application just days before the foreclosure sale.

The trial court considered the evidence of the plaintiffs' discussion of a repayment plan with Taylor during the October 3 phone call. The court nevertheless concluded the plaintiffs failed to prove that Taylor's statement caused their damages. The court found there to be "no evidence that Plaintiffs could have prevented the foreclosure," and "not enough evidence" to demonstrate that Shellpoint would have stopped the pending foreclosure, "especially given the Plaintiffs' history of missed payments and the previous two foreclosure notices." There was no error in these rulings.

The plaintiffs also argue that the trial court should have considered Taylor's statement an affirmative statement that was false and misleading, and not just an "error." They argue this characterization matters for their Texas Debt Collection Practices Act claim, but the trial court's discussion of that claim did not depend on that characterization.

AFFIRMED.